[S. F. No. 10154.   In Bank.—February 15, 1924.]

MARY M. BOGART et al., Respondents, v. GEORGE K. PORTER COMPANY (a Corporation), et al., Appellants.

[1] CONTRACTS — AGREEMENTS FOR THE BENEFIT OF THIRD PARTY — CONSTRUCTION OF SECTION 1559 OF THE CIVIL CODE—STATUTE OF LIMITATIONS.—Section 1559 of the Civil Code, providing that a contract made expressly for the benefit of a third person may be enforced by him at any time before the parties thereto rescind it, is a rule of substantive law, and it means that the cause of action arises in favor of the third person upon the making of such a contract, and that such a cause of action subsists until the parties thereto rescind it. It does not mean that the right to commence and maintain an action upon such cause of action is exempted from the statutes of limitation.

[2] ID.—TRANSFER OF PROPERTY TO CORPORATION — ASSUMPTION OF LIABILITY—ACCRUAL OF CAUSE OF ACTION—STATUTE OF LIMITATION.—Where an individual conveys all of his property, real and personal, to a corporation which assumes and agrees to pay all of his obligations, a right of action in favor of a third person on such an obligation against the corporation accrues upon the maturity of the obligation which the latter has assumed and is outlawed at the expiration of four years thereafter.

[3] ID.—KEEPING OBLIGATION ALIVE—COMMENCEMENT OF SUIT.—In such a case the commencement of an action upon a promissory note against the estate of the deceased maker keeps the obligation alive as against the estate, but not as against any other parties liable upon the note, and does not stop the running of

the statute against the corporation which is a joint and several obligor.

[4] ID.—ASSUMPTION OF DEBT—RIGHT TO QUESTION DEBT.—While one who has received a transfer of property upon the agreement to pay· the debts of the grantor may not question the legality of the debts, he can defend against his obligation upon the ground that it has become barred as to him by the statute of limitation.

[5] ID.—DEMAND—ACCRUAL OF CAUSE OF ACTION.—Where a demand or acceptance is necessary before suit to perfect a right of action, a party cannot indefinitely and unnecessarily extend the bar of the statute by deferring such demand or acceptance but must make it within a reasonable time.

[6] ID.—PROPOSAL TO ASSUME DEBT—ACCEPTANCE—TIME.—Conceding that the contract of the grantee of property, in which the latter agrees to assume and pay the debts of the grantor, is nothing more than a mere offer or proposal, which could not give rise to an obligation unless and until accepted by the creditor, the duty rests upon the creditor to accept such proposal within a reasonable time and upon failure to do so the proposal is revoked by operation of law.

[7] ID.—AGENCY—NOTICE.—Knowledge possessed by an agent while he occupies that position and is executing the authority conferred upon him as to matters within the scope of his authority is notice to his principal, although such knowledge may have been acquired before the agency was created, if it appears that such knowledge was present in his mind at the time he acted for the principal.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. James M. Troutt, Judge. Reversed.

The facts are stated in the opinion of the court.

Knight, Boland, Hutchinson & Christin and Alan C. Van Fleet for Appellants.

Frank J. Solinsky, Edward R. Solinsky and Philip C. Boardman for Respondents.

MYERS, J.—Defendants appeal from a judgment in favor of plaintiff in an action upon a promissory note. The sole

5. When a statute of limitation begins to run against right of action. on contract payable on demand, notes, 136 **Am. St. Rep.** 469; 32 **L. R. A. (N. S.)** 486.

contention urged by them upon this appeal is that the cause of action was barred by the statute of limitations.

After the former decision of this case a rehearing was applied for by the respondent upon the ground that we had failed to consider one of the points made by her upon the oral argument and that we had, in effect, overruled the case of *More* v. *Hutchinson,* 187 Cal. 623 [203 Pac. 97]. The rehearing was granted in order that we might give further consideration to the point stressed upon the application therefor and re-examine our former conclusions in the light of their claimed conflict with the More case. After such re-examination we adhere to those conclusions upon the points then under consideration, and are satisfied that they present no real conflict with the rules announced in the More case.

On August 5, 1905, George K. Porter executed and delivered to O. H. Bogart, plaintiff's assignor, the note here sued on, which is for the sum of $2,575.20. The instrument is made payable eighteen months from the date thereof, to wit, March 5, 1907. After the execution of the note, and about September 10, 1906, Porter caused the incorporation of the George K. Porter Company. This company was formed principally to take over, hold, own, manage, and control the properties of Porter. In pursuance of this plan Porter a few days thereafter granted and conveyed to the company all of his real and personal property wheresoever situated. The company, as part of the consideration for this conveyance and transfer, agreed to and did assume the payment of all the outstanding indebtedness of Porter existing at the time of said conveyance. This agreement was never rescinded. Shortly thereafter, on November 16, 1906, Porter died. The claim of Bogart upon the note was duly presented within the statutory period to the executors of the estate of Porter. It was rejected, and a suit was duly commenced upon the note, which action is still pending and undetermined. On January 27, 1909, Bogart assigned, transferred, and set over to his wife, the plaintiff herein, all of his right, title, and interest in and to the said note and in and to the action based thereon for its collection, then pending against the executors of Porter's estate. About this time the affairs of the George K. Porter Company became involved and litigation resulted. A settlement was effected

under which a division of the assets of the corporation was made among its stockholders. In pursuance of this settlement the company conveyed all the real property located in the county of Los Angeles, valued at the sum of $750,000, in equal parts to its three principal stockholders, Kate C. Boruff, one of the defendants, and Estelle C. Christin and Benjamin F. Porter, interveners herein. At this time there still remained in the company undistributed certain lands situated in different counties of the state, which, together with certain personal property, amounted in value to about $65,000. On September 30, 1911, this property was transferred and conveyed to the Merchants Bank and Trust Company, a corporation, now the Hellman Commercial Trust and Savings Bank, defendant herein, for the purposes of sale, and for the payment out of the proceeds thereof of the taxes thereon and other incidental expenses connected therewith, and also for the payment of all the indebtedness of the Porter Company. Thereafter this last-named company failed to pay its license tax and forfeited its charter, and its directors, Kate C. Boruff, Fred L. Boruff, Louis P. Boardman, and J. E. Pearce, became its trustees by operation of law. Under all of these circumstances, and upon the promise of the Porter Company to pay all of the outstanding indebtedness of George K. Porter, this action was commenced January 20, 1917, against the George K. Porter Company, its trustees, above named, and against the Hellman Commercial Trust and Savings Bank, as the holder of certain assets of the Porter Company charged with the payment of its indebtedness under the conveyance, as above indicated. The facts, as above stated, are interpreted in the light most favorable to respondent's contentions and in support of the judgment.

[1] Appellants contend that whether the gist of plaintiff's action be considered to be upon the original note which matured in 1907, or upon the assumption thereof by the George K. Porter Company in 1906, or upon the implied assumption thereof by the bank in 1911, in either event it is barred by the statute of limitations, this action having been commenced more than four years subsequent to all of those dates. Respondent contends that her cause of action rests upon the agreement of the George K. Porter Company in 1906, whereby it assumed and agreed to pay all of the outstanding indebtedness of the said George K. Porter; that

under the well-recognized rule of equity, which has been enacted as a rule of law in section 1559 of the Civil Code, providing that "a contract made expressly for the benefit of a third person may be enforced by him at any time before the parties thereto rescind it," her right of action is exempted from the operation of any of the statutes of limitation. Her position is that the phrase "at any time before the parties thereto rescind it" expresses the only limitation upon her right to maintain her action, and that all statutes of limitation are excluded thereby. We cannot accept this view. The rule of law there expressed is a rule of substantive law, and is not adjective or procedural. It means that the *cause of action* arises in favor of the third person upon the making of such a contract and that such a cause of action subsists until the parties thereto rescind their contract. It does not mean that the *right to commence and* maintain an action upon such *cause of action* is exempted from the statutes of limitation. This conclusion is fortified by a consideration of the various provisions of title two, part two, of the Code of Civil Procedure relating to the time of commencing civil actions. The legislature has there specified the limitations applicable to a wide variety of actions, and then to rebut the possible inference that actions not therein specifically described are to be regarded as exempt from limitations, it has specified a four-year limitation upon "an action for relief not hereinbefore provided for" (sec. 343) ; and where it has intended that an action shall be exempt from limitations it has said so in clear and unmistakable language. (Code Civ. Proc., sec. 348; Civ. Code, sec. 309.)

[2] It is the theory of some of the decisions that the right of action thus recognized finds its source in the agreement of the immediate parties thereto (George K. Porter and the George K. Porter Company) from which the law operating upon the acts of the parties creates the duty, establishes a privity and implies the promise and obligation on which the action is founded. (*Washer* v. *Independent M. & D. Co.*, 142 Cal. 703 [76 Pac. 654].) Other cases proceed upon the theory that "When a grantee contracts with his grantor to pay the latter's debt or obligation in payment or in part payment for the conveyance, the creditor or obligee may accept and appropriate that contract to himself and maintain a suit in equity to enforce it. In that event the grantee

becomes the principal debtor and the grantor the surety and the creditor's suit stands on the equitable doctrines that the creditor may have the benefit of any security or obligation given by the principal debtor to the surety, . . . '' (*Silver King Coalition Mines Co.* v. *Silver King Cons. Min. Co.,* 204 Fed. 169 [Ann. Cas. 1918B, 571, 122 C. C. A. 405]; 3 Pomeroy's Equity Jurisprudence, 4th ed., p. 2891; *Williams* v. *Naftzger,* 103 Cal. 438, 440 [37 Pac. 411]; *Daniels* v. *Johnson,* 129 Cal. 415, 418 [79 Am. St. Rep. 123, 61 Pac. 1107].) ''In fact, the relief granted is merely the application towards the payment of the debt by a court of equity of the mortgagor's property, consisting of the promise running to him from the grantee of the mortgaged premises.'' (1 Williston on Contracts, p. 724.)

Under the rule of the cases which hold that the right of action ''finds its source in the agreement of the immediate parties thereto'' it is apparent that the obligation from the promisor (grantee) to the third person (creditor) arises at once upon the making of the agreement. The law instantly ''creates the duty, establishes a privity and implies the promise and obligation on which the action is founded.'' The cause of action therefore arises at once and the right of action thereon accrues when the obligation is breached. If the original indebtedness does not mature until after the assumption thereof by the promisor (grantee), the breach would occur and the right of action accrue when, upon the maturity of the original indebtedness, the promisor failed to pay the same. (*Roberts* v. *Fitzallen,* 120 Cal. 482 [52 Pac. 818].) If the original indebtedness had matured prior to the assumption thereof, the obligation would be breached immediately upon its creation, and the right of action would accrue at that time. (*Davis* v. *Davis,* 19 Cal. App. 797 [127 Pac. 1051]; *Daniels* v. *Johnson, supra.*)

Under the rule of the cases which proceed upon the theory that the grantee (promisor) becomes the principal debtor and the grantor (promisee) his surety and that the creditor (third person) is entitled to equity to enforce that obligation and apply it to the satisfaction of his claim, it is clear that the basis of his action is the obligation from the grantee to his grantor. That obligation is fully created when the contract to assume the debt is entered into, and the right of action thereon would accrue at the time and under the con-

ditions as above stated.  This conclusion is supported by a consideration of the provisions of section 2854 of the Civil Code, that "A creditor is entitled to the benefit of everything which a surety has received from the debtor by way of security for the performance of the obligation and may, *upon the maturity of the obligation,* compel the application of such security to its satisfaction."  (Italics added.)  It follows that under either of the foregoing theories as to the nature of plaintiff's cause of action herein, her right of action thereon as against the George K. Porter Company accrued upon the maturity of the obligation which the latter had assumed, which matured March 5, 1907.  Assuming it to be founded upon an instrument in writing, it outlawed at the expiration of four years after it accrued.  (Code Civ. Proc., sec. 337, subd. 1; sec. 312.)

[3]  The obligation herein was kept alive by the commencement of the action upon the note against the estate of George K. Porter, deceased, which suit is still pending and undetermined.  This undoubtedly has the effect of keeping the right of action alive as against that estate, but not as against any other parties liable upon the note.  Conceding that the indebtedness evidenced by this note was a part of the indebtedness assumed and agreed to be paid in 1906 by the George K. Porter Company, the latter became, in effect, a joint and several obligor upon that note, the same as if it had been a signer thereof, and the rule would apply that the pendency of an action against one of several joint obligors stops the running of the statute of limitations only as to him who was the party defendant at the time it was filed.  (*Jeffers* v. *Cook,* 58 Cal. 147, 150; *Spaulding* v. *Howard,* 121 Cal. 194, 198 [53 Pac. 563]; *Harrison* v. *McCormick,* 122 Cal. 651 [55 Pac. 592]; *Sherman* v. *S. K. D. Oil Co.,* 185 Cal. 534, 548 [197 Pac. 799].)

[4]  Respondent relies upon the rule stated in 3 Pomeroy's Equity Jurisprudence, fourth edition, page 2888, as follows: "That a grantee who thus assumes payment, in whole or in part, of a mortgage as a portion of the purchase price of the land conveyed to him, cannot contest the validity of the mortgage *on any ground* and thus evade the liability which he has assumed."  Respondent construes this rule to mean that such a grantee cannot defend against the enforcement of such a mortgage even upon the ground that the

action thereon is barred *as to him* by the statute of limitations. But the rule does not go thus far either in its language or in its meaning. It means only this: that a grantee who thus assumes payment of a mortgage cannot contest the validity thereof *as a valid and subsisting obligation at the time he assumed it;* or, in other words. that he will not be heard to claim that it was not *at that time* a valid and subsisting obligation. That this is the extent and the limitation of the rule is made manifest by an examination of the numerous cases which are cited by the author to this portion of his text. All of those cases, with the exceptions hereafter noted, were cases wherein the grantee sought to contest the validity of the mortgage upon a ground which, if successful, would have established its invalidity at the time he assumed it, such as failure or want of consideration therefor, fraud, undue influence, nonexecution, usury, etc. The rule is but a particular application of the general rule of estoppel by deed. A grantee who by a covenant in his deed expressly recognizes the existence and validity of a particular debt or other obligation and assumes and agrees to pay the same is estopped thereby to claim that such debt or obligation was not valid or subsisting at the time he so recognized and assumed it, but the estoppel this arising goes no further than the admissions of the covenant out of which it arises. This is apparent from the cases cited by the author. For example, in *Sherman* v. *Goodwin,* 12 Ariz. 42 [95 Pac. 121], *Robinson Bank* v. *Miller,* 153 Ill. 244 [46 Am. St. Rep. 883, 27 L. R. A. 449, 38 N. E. 1078], and *Drury* v. *Holden,* 121 Ill. 130 [13 N. E. 547], it was held that where the deed does not specifically describe the particular debt, but contains a general clause whereby the grantee assumes ''all mortgage and other liens standing against the property,'' or ''all the outstanding indebtedness of the grantor,'' such grantee is not estopped thereby from contesting the validity of any such claimed mortgage, lien or indebtedness. ''If the promisor's agreement is to be construed as a promise to discharge whatever liability the promisee is under, the promisor must certainly be allowed to show that the promise[e] was under no liability. Thus one who in return for an assignment of property assumed all the grantor's debts would certainly be allowed to dispute the validity of any debt. On the other hand, if the promise means that the

promisor agrees to pay a sum of money to A, to whom the promisee says he is indebted, it is immaterial whether the promisee is actually indebted to that amount or at all. The promisee has decided that question himself. Where the promise is to pay a specific debt, for example, to assume a specific mortgage, especially if the amount of it is deducted from the consideration paid by the promisor for the mortgaged property, this construction will generally be the true one. Most of the cases accordingly refuse to allow one who has assumed a specific debt to set up usury or other defenses, of which the debtor might have availed himself.'' (1 Williston on Contracts, sec. 399.) This limitation of the rule was recognized and impliedly approved by this court in *Alvord* v. *Spring Valley G. Co.,* 106 Cal. 547, 553 [40 Pac. 27]. So, also, it was held in *Davis* v. *Davis,* 19 Cal. App. 797 [127 Pac. 1051], that such a grantee cannot set up that the mortgaged debt *when he assumed it* was barred by the statute of limitations, because to do so would be to contradict the covenants of his deed, which recognized the debt as a then valid and subsisting obligation. That the rule here in question rests upon the doctrine of estoppel by deed is also expressly recognized in the cases of *Hurwitz* v. *Gross,* 5 Cal. App. 614, 618 [91 Pac. 109], and *San Ramon Valley Bank* v. *Walden Co.,* 53 Cal. App. 534, 536 [200 Pac. 662], as well as in the case of *Alford* v. *Spring Valley G. Co., supra.*

''The nature of a creditor's right against one who has promised the debtor to pay the debt is also involved in determining when the statute of limitations bars the creditor's action. On principle the creditor must have a claim that has not been barred against the original debtor [see, also, *Daniels* v. *Johnson,* 129 Cal., at page 418 [79 Am. St. Rep. 123, 61 Pac. 1107], and the latter must also have such a claim against the promisor. But courts which allow a direct right to the creditor against the promisor hold that though the creditor's original claim is barred he may nevertheless enforce a claim against the promisor *if the statutory period has not run since the debt was assumed.''* (1 Williston on Contracts, sec. 398). (Italics added.)

No case has been cited herein, nor have we found any, which *decides* that the statute of limitations will not run in favor of a grantee, upon his contract to assume a debt,

or that a grantee who is sued upon a debt, the payment of which he has assumed by a covenant in his deed, is estopped to defend upon the ground that the statute has run upon his *obligation* since the maturity thereof. There are cases in which language is used which seems to support this conclusion, but upon analysis it is found that such language goes beyond the points decided and is irrelevant to the facts there under consideration. For example, in *Davis* v. *Davis, supra,* the court cites a Michigan case as holding ''that where a vendee assumes the payment of a mortgage indebtedness, he waives all defenses thereto except payment.'' That question was not involved in the Davis case. The sole question there was whether such a vendee could defend on the ground that the indebtedness was not a valid obligation at the time he assumed it, and the court correctly held that he could not. The Michigan case there cited (*Terry* v. *Durand Land Co.,* 112 Mich 665 [71 N. W. 525]), did use the language above quoted, but all that it *decided* in this connection was that such a grantee could not set up want of consideration between the assignee and the assignor of the mortgage as a defense to a suit by the assignee. The case there cited as authority for the quoted *dictum* (*Crawford* v. *Edwards,* 33 Mich. 353) went no further. The same is true of the case of *Key West etc. Co.* v. *Porter,* 63 Fla. 448 [Ann. Cas. 1914A, 173, 58 South. 559]. *Allen* v. *Freear,* 50 Cal. App. 645 [195 Pac. 748], was a suit in equity brought by a creditor of one Bateman to impose a trust upon certain property. Bateman, who had become financially involved in the conduct of a grocery business, conveyed the same to Freear in trust to conduct the business, pay Bateman's debts from the proceeds thereof, and then to reconvey to Bateman a one-half interest therein, and upon no other consideration. Freear sold the business in violation of the trust, receiving therefor a note and mortgage, upon the proceeds of which it was sought to impose the trust. Freear pleaded the statute of limitations and the district court of appeal held that the trust, being a positive one, though resting in parol, the statute could not run until a repudiation and knowledge thereof. It then added: ''Moreover, Freear having received the property under the express agreement to pay the debts of Bateman, and there being no repudiation thereof, it does not lie in his mouth to plead the statute as against Bate-

man's creditors.   He cannot be heard to say that while the
debt is due from the person with whom he contracted, that
the statute has intervened.'' (Citing *Washer* v. *Independent etc. Co., Williams* v. *Naftzger* and *Davis* v. *Davis,
supra.*) If this language is to be given the broad effect contended for by respondent herein, it is not supported by the
cited cases or by any others which have been called to our
attention.   Under the facts in that case the statute of limitations had not run under any tenable theory of the nature
of the cause of action.   The language above quoted was not
necessary to the decision and is not to be regarded as authority herein.

It is to be noted that there is no element of trust in the
instant case, so far as the question of the liability of the
George K. Porter Company is concerned, and the respondent
so concedes.   There is neither allegation nor evidence nor
finding which would support the inference that a trust
relationship existed on the part of that defendant.   It
clearly appears that the conveyance of property from Porter
to the Porter Company was not upon any trust, but, on the
contrary, passed to the grantee upon a valuable consideration, not merely the legal title, but the entire beneficial interest in the property conveyed, and the trial court found
that ''the said corporation thereupon became the owner
of all the said property.''

In the case of *More* v. *Hutchinson, supra,* it was held that
the rule that suit may be brought by the third person upon
a contract entered into for his benefit immediately upon the
execution of the contract arises from the fact that the suit
itself is deemed an acceptance of the contract, and until such
acceptance there is no liability on the part of the person
making the contract, but such contract, as far as the third
person is concerned, amounts to a mere offer or proposal.
On the authority of that case it is now argued that the
assumption by the George K. Porter Company of the debts
of Porter was a mere offer or proposal which did not give
rise to any obligation in favor of plaintiff until the acceptance thereof by plaintiff; that plaintiff never accepted it
until the commencement of this action, and, therefore, the
statute of limitations could not have run.   This point was
not made nor was that case cited in any of the briefs on
file herein, although the case had been briefed three differ-

ent times by both parties upon this appeal; first, upon the original appeal, then upon application for rehearing in the district court of appeal, and again upon application for hearing by this court after decision by the district court of appeal. The point was mentioned and the More case cited for the first time in the oral argument at the hearing by this court after decision by the district court of appeal, but nothing was said to indicate that the point was not discussed or that case cited in the briefs on file. The former opinion was written in response to the arguments presented in the briefs, and, therefore, did not dispose of the point now urged.

The case of *More* v. *Hutchinson* was dealing with the peculiar statute of limitations applicable to stockholders' liability which forms an express exception to the general rule with respect to the time when the statute begins to run. (Code Civ. Proc., sec. 359.) The general rule is that the statute runs from the time when the cause of action accrues (Code Civ. Proc., sec. 312), or, in other words, when the creditor is entitled to commence and maintain an action thereon. But the statute under consideration in the More case runs from the time when the liability was created, which may be, and frequently is, an entirely different point of time. This distinction was pointed out in the case of *Hunt* v. *Ward*, 99 Cal. 612 [37 Am. St. Rep. 87, 34 Pac. 335], which was cited in the opinion in the More case. The statute of limitations there under consideration looks to the time when the defendant's liability arose, but the general rule is that a statute of limitation looks to the time when the plaintiff's right to commence the action accrued. "The theory of our statute of limitations is that a creditor has four years, (or other time as the case may be) on any day of which he may, of his own volition, commence an action." (*Union Collection Co.* v. *Soule,* 141 Cal. 99 [74 Pac. 549].) Plaintiff herein had nearly seven years, on any day of which she might, of her own volition, have commenced this action. The bringing of the suit constitutes the *acceptance* which creates the obligation and perfects the *right* of action. (*Morgan* v. *Overman S. M. Co.,* 37 Cal. 534, 537; *More* v. *Hutchinson, supra.*)ʻ So, with reference to a promissory note payable on demand, the bringing of the suit is a sufficient *demand,* and the statute runs not from the time of the demand, but from the execution of the note. (*Brummagin*

v. *Tallant,* 29 Cal. 503 [89 Am. Dec. 61].)   **[5]**   Where a
demand or acceptance is necessary before suit to perfect a
right of action, a party cannot indefinitely and unnecessarily
extend the bar of the statute by deferring such demand or
acceptance, but must make it within a reasonable time.
(*Thomas* v. *Pacific Beach Co.,* 115 Cal. 136, 142 [46 Pac.
899]; *Meherin* v. *San Francisco Produce Exch.,* 117 Cal.
215, 217 [48 Pac. 1074]; *Dennis* v. *Bint,* 122 Cal. 39, 44
[68 Am. St. Rep. 17, 54 Pac. 378]; *Harrigan* v. *Home Life
Ins. Co.,* 128 Cal. 531, 548 [58 Pac. 180, 61 Pac. 99]; *People*
v. *California Safe Dep. etc. Co.,* 41 Cal. App. 727, 731 [183
Pac. 289], and cases there cited.)

**[6]**   It is argued that the instant case is not governed
by the rule last mentioned because it is not a case wherein
the acceptance is required merely to perfect a *right* of
action upon a *cause* of action already existing, but presents
a situation, as in the More case, wherein the acceptance is
necessary to create the obligation itself which constitutes the
*cause* of action.   So, also, was the case of *Thomas* v. *Pacific
Beach Co., supra,* but granting this contention, and giving
full application herein to the rule of the More case, and con-
ceding that the contract of the George K. Porter Company,
whereby it assumed and agreed to pay Porter's debts, was, as
to the plaintiff, nothing more than a mere offer or proposal,
which could not give rise to an obligation unless and until
accepted by plaintiff, it follows that the duty rested upon
the plaintiff to accept such proposal within a reasonable
time, and upon her failure to do so the proposal was re-
voked by operation of law.   (Civ. Code, sec. 1587, subd. 2;
1 Williston on Contracts, sec. 54.)   The "proposal" herein
was made in 1906 and not accepted by plaintiff until 1917.
It is suggested that plaintiff did not know of its existence
until "a year or two" before this action was commenced.
But it conclusively appears from the record that her attor-
ney, who was especially charged with the collection of this
particular indebtedness, was fully cognizant of all of the
facts as early as 1910, and she is chargeable with that
knowledge.   (1 Cal. Jur., pp. 846–854, and cases cited.)
**[7]**   Counsel for respondents urge that the knowledge ac-
quired by Mrs. Bogart's attorney, Mr. Louis P. Boardman,
of the existence of the resolution of assumption of indebted-
ness which is the foundation of the present action, was ac-

quired by him not while he was acting as her attorney but while he was acting as director and vice-president of the corporation, and they urge that she is not chargeable with this knowledge under the rule that "a client, as principal, is not bound by knowledge obtained by his attorney as agent in the course of other employment" (citing *Wittenbrock* v. *Parker,* 102 Cal., at p. 101, 41 Am. St. Rep. 172, 24 L. R. A. 197, 36 Pac. 374]). That rule is not applicable to the facts of this case. It appears by the uncontradicted testimony of Mr. Boardman himself that he was acting as Mrs. Bogart's attorney during all of the time from the date of the assignment of the note to her by her husband in 1909 until shortly before the commencement of the present action; that as such attorney he was in charge, by express arrangement with her, of all proceedings that were had or taken in the action relative to the disposition of the note or otherwise, and also relative to all considerations of settlement and compromise; that he acquired full knowledge of the existence of the resolution in 1910 and that he did not become director or vice-president of the defendant corporation until July, 1911; that prior to his employment by or in behalf of the defendant corporation he held many consultations with representatives of the George K. Porter Company, at which "the outstanding indebtedness of the company was considered, including this obligation represented by this note." The rule invoked by counsel is subject to the qualification that "knowledge *possessed* by an agent while he occupies that relation and is executing the authority conferred upon him as to matters within the scope of his authority, is notice to his principal, *although such knowledge may have been acquired before the agency was created,* if it appears that such knowledge was present in his mind at the time he acted for the principal." (*Cooke* v. *Mesmer,* 164 Cal. 332, 338 [128 Pac. 917]; *Christie* v. *Sherwood,* 113 Cal. 526, 530 [45 Pac. 820].) It further appears from Mr. Boardman's testimony that he was actively engaged during the years 1909 and 1910 in taking depositions to be used in the trial of the action of. Mrs. Bogard against the Porter Estate upon this note, and that during the years 1910 and 1911 he was negotiating as attorney for Mrs. Bogart with the officers of the defendant corporation for a settlement by compromise of her claim upon this note. The circumstance that Mr. Boardman, before accepting employ-

ment in behalf of the Porter Company, deemed it necessary to have an express understanding with the representatives of that company that such employment should be without prejudice to his position as attorney for Mrs. Bogart and without prejudice to his right to proceed upon her claim, shows that he had in mind at that time the knowledge that her claim was against the corporation and therefore adverse to it. Under these circumstances his knowledge of the existence of the resolution which is the foundation of the present action must be deemed to have been her knowledge from the time he first acquired it in 1910.

It cannot be said that an acceptance after an unexplained delay of more than six years was within a reasonable time. (6 Cal. Jur., pp. 56, 57, and cases cited.) It follows that plaintiff is not entitled to recover herein in either view of the case. If it be deemed that the contract of assumption by the George K. Porter Company, *ipso facto*, created the cause of action here sued upon, the action is barred by the statute of limitations. If it be deemed that such assumption constituted a mere offer or proposal, the same was revoked by operation of law before its acceptance by plaintiff and therefore never gave rise to the obligation here sought to be enforced.

With respect to the question of the liability of the Hellman Commercial Trust and Savings Bank, it is to be noted that this defendant did not assume, or agree, or promise, or offer to pay any indebtedness whatsoever. The George K. Porter Company conveyed to it certain property in trust for certain specified purposes, among which was the payment of the debts of the grantor, and it still holds said property under said trust. It follows that if the respondent were entitled to recover herein as against the Porter Company, she would also be entitled to have her claim satisfied out of the assets held by the bank in trust for that company. But having no enforceable claim as against the Porter Company, she has none against the bank.

The judgment is reversed.

Wilbur, C. J., Waste, J., Seawell, J., and Lawlor, J., concurred.

Rehearing denied.

All the Justices concurred.